## EDWARD LAMBERT *vs.* PHILADELPHIA, BALTIMORE AND WASHINGTON RAILROAD COMPANY ET AL.

### *Carrier—Injury to Postal Clerk—Boarding Car.*

A postal clerk, who was accustomed to board the mail car while the engine to which it was attached was taking water from a tank a short distance from a station, could not recover for injuries, received by him in attempting so to board the car, as the result of a brief backward movement by the engine in getting into the proper position as regards the tank, it being for him, before attempting to board the car, to ascertain that the engine was at the tank in a position to take in water, where it would be for a period sufficiently long to enable him to board the car.                                              pp. 665, 666

In an action on account of injuries received by a postal clerk while attempting to board a mail car, as a result of a sudden movement of the train, while defendant's employees were getting the engine into position for taking water from a tank, away from the station, *held* that the exclusion of evidence as to why he attempted to board the car at that point was not reversible error, since its admission could not have affected the conclusion that, by reason of his undue haste in making the attempt, he could not recover.                                        p. 666

*Decided June 7th, 1924.*

Appeal from the Circuit Court for Talbot County (WICKES and KEATING, JJ.).

Action by Edward Lambert against the Philadelphia, Baltimore and Washington Railroad Company and the Pennsylvania Railroad Company. From a judgment for defendants, plaintiff appeals. Affirmed.

The cause was argued before PATTISON, URNER, ADKINS, OFFUTT, and DIGGES, JJ.

*T. Alan Goldsborough,* with whom were *N. E. Clark* and *Charles J. Butler* on the brief, for the appellant.

*J. C. Mullikin, Joseph B. Seth, G. Elbert Marshall* and *W. Mason Shehan,* for the appellees.

PATTISON, J., delivered the opinion of the Court.

The appeal in this case is from a judgment for the defendants in a suit brought against them by the appellant to recover for personal injuries sustained by him in attempting to board one of their trains, caused, as the plaintiff alleges, by the negligence of the defendants.

The suit was originally brought against The Philadelphia, Baltimore and Washington Railroad Company, but the declaration was amended by adding the Pennsylvania Railroad Company as a party defendant thereto.

The plaintiff, Edward Lambert, was, at the time of the accident, on the 17th day of January, 1921, and for more than twenty years prior thereto, a postal clerk in the service of the United States Government, upon the run from Easton, Maryland, to Clayton, Delaware, on the road operated by the defendants, or one of them.

The train, in connection with which the accident occurred, left Oxford, Maryland, on the day of the accident and had proceeded northward as far as Easton, but before pulling in at the station at the latter place, where the mail was received and delivered, the train, as was its usual custom, first proceeded to the water tank, which was to the south of the station, to supply the engine with water. In doing so the cars, including the mail car, were not detached from the engine. It appears from the record that the engine in approaching the water tank went about four feet beyond the point where it should have stopped; that is to say, when the engine stopped the opening in the water tank of the tender attached to the locomotive was about that distance beyond the reach of the spout of the stationary tank through which the water was to be supplied. This necessitated a backward movement of the engine for the distance stated, in order to place the engine in a position to receive the water from the tank, and before or while this was being done the plaintiff attempted to board the mail car through a door on the side of the car.

At the point where the car was then located there was, as described in the evidence, a ditch beside the track, and from that ditch, at the point where the plaintiff attempted to board the train, to the sill of the car door above, was a distance of about six feet and a half. To aid one in boarding the car from a station platform there had been placed on the side of the car two iron rungs. The first of these was about four feet above the ditch, and the other sixteen inches above it, and a like distance below the sill of the car door.

The plaintiff in his testimony stated that since the erection of the water tank, which, as he said, was seventeen years before the time he testified in this case, he, with the knowledge of those operating the trains, had been entering the mail car through the door mentioned while it was at the place where he attempted to enter on the day of the accident. On that occasion he said, "I went to the station and unlocked the box that is there and proceeded down the track so as to be opposite the place where the car stops" when the engine is taking in water at the tank. "When the train came in I attempted to get aboard the car and opened the door. I have always gotten aboard at that spot. When the train came to a standstill I attempted to get aboard of the car by getting up on the rungs and opening the door. I got upon the rung and I opened the door * * * I got up and opened the door and had my right foot on the sill of the door and was reaching for the doorknob. As I did that there was a sudden jerk of the car and I went backward in the low place, * * * a ditch." The movement of the train, which, as he says, caused him to fall, resulting in the injury complained of, was a "backward jerk."

The effect of his evidence was that at the times he boarded the trains at the place mentioned by him the engine would be standing at the tank taking in water. It was then, while the engine was there, not in motion, that he availed himself of the opportunity to board the train or enter his car, which, as he says, was done with the knowledge of those operating the train. In his testimony he explained how the water was

conveyed from the stationary tank beside the track to the tank in the tender attached to the engine, saying that the position of the engine, in respect to the stationary tank, had to be adjusted so as to receive the water through a spout or arm hanging or projecting from said tank.

On cross-examination the plaintiff was asked: "I think you said the instant or the moment the train stopped you undertook to climb on?" and he answered, "As soon as the train came to a standstill I got aboard of the train—I attempted to get aboard."

The plaintiff further testified that the usual position of an engineer in operating his engine is on its right side; that he, the plaintiff, would not have been visible to him at the point where he attempted to board the train, but, as stated by the plaintiff, he did not know where either the engineer or the fireman was on that occasion, as he did not notice them and did not know that he was observed by them.

A witness offered by the plaintiff testified that when the engine came up to the tank to get water it went beyond it about four feet and "then jogged back to get water." This was the only movement it made. The plaintiff in his testimony stated that the jerk of the train mentioned by him was a backward movement. Consequently the stopping of the train to which he referred was the one made by it after the engine had passed the tank, and the "jerk" mentioned by him was the backward movement which was made to place the engine in a position to receive the water at the tank. If the statement of the plaintiff be correct, that he, for a number of years, had been accustomed to board the mail car while the engine was at the tank taking in water, a place other than the one provided for him, with the knowledge of those in charge of the trains, even then the defendants or those operating the train on the day of the accident had no reason to believe that he would attempt to board the car until the engine was placed at the tank in readiness to receive water therefrom, or, in other words, before the car was in the position at which the plaintiff says he was accustomed to

board it. Without passing upon the question whether additional burdens and liabilities were imposed upon the defendants by reason of the alleged custom, for we need not in this case do so, it nevertheless was the duty of the plaintiff to ascertain whether the engine was at the tank in a position to take in water, where it would be for a period sufficiently long to enable him to board the car.

The record discloses no evidence showing that those in charge of defendants' train failed to perform, or withheld from the plaintiff, any duty they owed him, or that they were guilty of any negligence causing the injury complained of. Before the plaintiff could have recovered it was necessary to show that the defendants owed him a duty which they failed to perform, and this was not shown by the evidence offered.

In our opinion the court was right in granting the prayer withdrawing the case from the consideration of the jury.

The record contains nine exceptions upon the rulings of the court in the rejection of evidence, all of which we think become unimportant as we view the case.

The first exception was to the admission of a photographic commission from the United States Government showing his appointment as a postal clerk. If this was admissible its rejection did not amount to a reversible error, as it was thereafter shown that he was a postal clerk so appointed, and such fact was not controverted, but in no event could the admission of such evidence have affected the conclusion reached. The second, third, fourth, fifth, sixth and seventh exceptions were to the rejection of evidence sought to be introduced by the plaintiff as to why the plaintiff boarded the train where he did, without waiting for it to reach the station. For the last reason assigned in passing upon the first exception, no reversible error can be found in the rejection of this testimony, and the same may be said of the rulings of the court upon the eighth and ninth exceptions.

The judgment of the court below will, therefore, be affirmed.

*Judgment affirmed with costs.*